UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of REXEL, INC., a Delaware corporation, doing business as PLATT ELECTRIC SUPPLY,<br><br>Plaintiff,<br><br>v.<br><br>HUBZONE CORP., a California corporation, also known as HUBZONE CORPORATION, and AMERICAN CONTRACTORS INDEMNITY COMPANY,<br><br>Defendants. | No. 2:16-cv-408-JAM-EFB<br><br>FINDINGS AND RECOMMENDATIONS |
| AMERICAN CONTRACTORS INDEMNITY COMPANY, a California corporation,<br><br>Cross-claimant,<br><br>v.<br><br>HUBZONE, CORP., a California corporation doing business as HUBZONE CORPORATION; CHARMIANE BURNETT, an individual; and LARRY DEON LOFTON, an individual,<br><br>Cross-defendants. | |

This case is before the court on defendant and cross-claimant American Contractors Indemnity Company's ("ACIC") motion for entry of default judgment against cross-defendants Hubzone Corp. ("Hubzone"), Charmiane Burnett, and Larry Lofton. ECF No. 24. For the following reasons, it is recommended that the motion be granted.

I. Background

Plaintiff Rexel, Inc. filed this action against defendants Hubzone and ACIC, alleging a single claim under the Miller Act. ECF No. 1. ACIC timely filed an answer to the complaint and a cross-complaint against Hubzone; its president, Charmaine Burnett; and its secretary, Larry Lofton (collectively "cross-defendants"). ECF No. 9.

On April 12, 2017, ACIC filed a first amended cross-complaint. ECF No. 18. According to that cross-complaint, ACIC is authorized to do business as a surety in California, and Hubzone is a contractor licensed in California. *Id.* ¶¶ 4, 5. In July 2009, cross-defendants executed a general indemnity agreement in favor of ACIC (the "Agreement"). *Id.* ¶ 7. Under the Agreement, cross-defendants agreed to indemnify ACIC in consideration for issuance of surety bonds. *Id.* ¶ 8. The Agreement further provided that if a claim is made against ACIC or ACIC deems it necessary to establish a reserve for potential claims, the cross-defendants will deposit with ACIC cash or other collateral security to protect ACIC with respect to such claim or potential claims. *Id* ¶ 9. Pursuant to the Agreement, ACIC agreed to issue six bonds on behalf of Hubzone related to construction projects for the Department of Veterans Affairs ("VE"). *Id.* ¶ 11.

Various claimants asserted claims against ACIC seeking recovery under each of the bonds, with total demands for payment exceeding $528,574.44. *Id.*¶¶ 12, 13. On May 2, 2016, ACIC sent a letter to cross-defendants notifying them of each claim that had been asserted against the bonds and demanding security be deposited by no later than May 16, 2016. *Id.* ¶ 14. Cross-defendants, however, did not respond to the letter, nor did they deposit collateral security with ACIC as required by the Agreement. *Id.* ¶¶ 14, 15. The first amended cross-complaint alleges

/////

/////

/////

2

claims styled as: (1) breach of contract, (2) statutory reimbursement, (3) equitable indemnity, (4) specific performance, and (5) breach of fiduciary duty.[1] ECF No. 18.

ACIC has filed certificates of service, reflecting that cross-defendants were served with a copy of a summons, first amended complaint, and original cross-complaint on December 26, 2016 (ECF Nos. 14-16), and a copy of the first amended cross-complaint on May 22, 2017 (ECF Nos. 19-21). After cross-defendants failed to timely respond to the first amended cross-complaint, ACIC requested the clerk's entry of their default (ECF No. 22), which was entered on June 20, 2017 (ECF No. 23). The instant motion was filed just over a year later. ECF No. 24.

II. Legal Standards

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. *See* Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)).

/////

---

[1] The statutory reimbursement claim is alleged only against Hubzone, with the remaining claims asserted against all cross-defendants. ECF No. 18 at 6-11.

3

As a general rule, once default is entered, the factual allegations of the complaint are taken as true, except for those allegations relating to damages. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citations omitted). However, although well-pleaded allegations in the complaint are admitted by cross-defendants' failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). A party's default conclusively establishes that party's liability, although it does not establish the amount of damages. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (stating that although a default established liability, it did not establish the extent of the damages).

III. Discussion

    A. Appropriateness of the Entry of Default Judgment Under the Eitel Factors

        1. Factor 1: Possibility of Prejudice to Plaintiff

The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment. *See Cal. Sec. Cans*, 238 F. Supp. 2d at 1177. Here, ACIC would potentially face prejudice if the court did not enter a default judgment. Absent entry of a default judgment, ACIC would be unable to obtain remedies for cross-defendants' alleged misconduct.

        2. Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the Sufficient of the Complaint

The merits of the substantive claims and the sufficiency of the cross-complaint should be discussed together because of the relatedness of the two inquires. The court must consider whether the allegations in the cross-complaint are sufficient to state a claim that supports the relief sought. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *Cal. Sec. Cans*, 238 F. Supp. 2d at 1175.

ACIC only seeks default judgment on its breach of contract claim. ECF No. 24 at 3. The Agreement provides that it "shall be governed by and construed in accordance with the laws of the State of California. ECF No. 24-1 at 7. "In a federal question action that involves supplemental jurisdiction over state law claims, [courts] apply the choice of law rules of the

forum state . . . ." *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1080 (9th Cir. 2009). In California, "a freely and voluntarily agreed-upon choice of law provision in a contract is enforceable 'if the chosen state has a substantial relationship to the parties or the transaction or any other reasonable basis exists for the parties' choice of law.'" *1-800–Got Junk? LLC v. Super. Ct.*, 189 Cal. App. 4th 500, 513-14 (2010) (quoting *Trust One Mortg. Corp. v. Invest Am. Mortg. Corp.*, 134 Cal. App. 4th 1302, 1308 (2005)). There is "a strong policy in favor enforcing such provisions." *Id*. at 513.

The first amended cross-complaint alleges that both ACIC and Hubzone are California corporations, ACIC is authorized to do business in California as a surety company, and Hubzone is a California licensed contractor with its principle place of business in California. ECF No. 18 ¶¶ 4, 5. Accordingly, California law applies to ACIC's breach of contract claim. To succeed on a breach of contract claim under California law, ACIC must establish (1) the existence of a contract; (2) ACIC's performance; (3) cross-defendants' breach of the contract; and (4) damages flowing from the breach. *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008).

The first amended cross-complaint and evidence ACIC submitted in support of its motion are sufficient to establish a breach of contract claim under California law. ACIC and the cross-defendants allegedly entered into the Agreement, which provided that cross-defendants would indemnify ACIC—including reimburse ACIC for expenses and attorney's fees incurred in relation to any claims—in consideration for issuance of bonds. *Id*. ¶ 8. The Agreement also required cross-defendants to deposit cash or other collateral security if a claim was made, or ACIC determined a claim could potentially be made, against a bond. *Id* ¶ 9.

Pursuant to the Agreement, ACIC issued six bonds on behalf of Hubzone related to construction projects Hubzone was to complete for the VA. *Id*. ¶ 11; ACIC's Mot. for Default J. ("MDJ"), Exs. 2, 6, 9, 12, 15, 19. For one of the projects, Hubzone breached its contract with the VA by completely failing to perform under the contract. Affidavit of Amy Pacalide (MDJ, Ex. 24) ¶ 10. For the remaining five projects, Hubzone failed to pay a supplier or subcontractor despite being fully paid by the VA. *Id*. ¶¶ 16, 31, 26, 31, 37. As a result, a total of eight claims were made against the six bonds issued by ACIC. MDJ, Exs. 3, 7, 10, 13, 16, 20. After

investigating each claim, ACIC issued payments totaling $528,575.44 to settle the eight claims. *Id*. at Exs. 4, 8, 11, 14, 17, 21. Although ACIC satisfied its obligations under the Agreement, cross-defendants have allegedly failed to indemnify ACIC for the losses and/or expenses resulting from its issuance of the bonds. ECF No. 18 ¶ 18.

Thus, the record supports ACIC's right to relief on its breach of contract claim against cross-defendants. Accordingly, the second and third *Eitel* factors weigh in favor of default.

### 3. Factor Four: The Sum of Money at Stake in the Action

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Cal. Sec. Cans*, 238 F. Supp. 2d at 1177; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003). ACIC seeks damages in the amount of $528,575.44, plus interest and attorney's fees. Although the amount of money at stake in this case is large, it is not excessive in relation to cross-defendants' conduct and the amount ACIC expended in relation to claims made against the bonds.

### 4. Factor Five: The Possibility of Dispute Concerning Material Facts

The court may assume the truth of well-pleaded facts in the cross-complaint (except as to damages) following the clerk's entry of default. *See, e.g., Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); *accord Philip Morris USA, Inc.*, 219 F.R.D. at 500; *Cal. Sec. Cans*, 238 F. Supp. 2d at 1177. Accepting ACIC's allegations as true, there will likely be no dispute concerning a material fact.

### 5. Factor Six: Whether the Default Was Due to Excusable Neglect

The record reflects that cross-defendants' default was not due to excusable neglect. They were served a copy of the summons, the original cross-complaint, and the first amended cross-complaint. ECF Nos. 15-17, 19-21. ACIC also served cross-defendants a copy of the motion for default judgment. ECF No. 24-27. Thus, it appears that cross-defendants had notice of the ACIC's claims but decided not to defend against them.

/////

### 6. Factor Seven: The Strong Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. *Cal. Sec. Cans*, 238 F. Supp. 2d at 1177; *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010); *ACS Recovery Servs., Inc. v. Kaplan*, 2010 WL 144816, at *7 (N.D. Cal. Jan.11, 2010); *Hartung v. J.D. Byrider, Inc.*, 2009 WL 1876690, at *5 (E.D. Cal. June 26, 2009). Accordingly, this factor should not preclude entry of default judgment.

On balance, the *Eitel* factors weigh in favor of granting ACIC's motion for default judgment. However, entry of judgment at this juncture is premature. Under Rule 54(b), judgment may not be entered as to fewer than all the parties and all of the claims unless the "the court expressly determines that there is no just reason for delay." Plaintiff Rexel, Inc.'s claims remain pending, and ACIC has not argued, much less established, that there is no just reason to delay entering judgment on its claims against cross-defendants. Accordingly, although summary adjudication of ACIS's entitlement to default judgment may be determined by granting this motion, the entry of judgment against the cross-defendants on ACIC's claims must be deferred until resolution of all claims as to all parties.[2] Fed. R. Civ. P. 54(b).

B. Damages

In support of its motion for default judgment, ACIC submitted the declaration of Amy Pascalide, an Associate Bond Claims Attorney for ACIC. MDJ, Ex. 24. Ms. Pascalide's declaration establishes that after the six bonds were issued, a total of eight claims were made against the bonds. *Id*. ¶¶ 10, 16, 31, 26, 31, 37. To settle the claims, ACIC issued payments totaling $528,574.44. *Id.*; MDJ, Exs. 4, 8, 11, 14, 17, 21. Cross-defendants, however, have failed

---

[2] In this regard, the parties shall proceed diligently in litigating the remaining claims. Review of the docket reflects that plaintiff Rexel, Inc. has not diligently prosecuted its claims in the past. This case was filed in February 2016. ECF No. 1. No documents were filed over the next four months, and on July 8, 2016, Judge Mendez ordered plaintiff's counsel to show cause why this case should not be dismissed for lack of prosecution. ECF No. 4. In response, plaintiff apologized and requested an opportunity to file an amended complaint. ECF No. 5. That request was granted, and plaintiff filed its first amended complaint on July 15, 2016. ECF Nos. 6, 7.

to reimburse ACIC for the costs incurred in settling those claims. MDJ, Ex. 24 ¶48. This evidence is sufficient to support ACIC's request for damages in the amount of $528,574.44.

ACIC also seeks prejudgment interest from the date each claim was paid, as well as the attorney's fees incurred in resolving the claims. The Agreement specifically provides that cross-defendants are required to indemnify ACIC "against any and all demands, liabilities, losses, costs damages, attorneys' fees and expenses . . . together with interest thereon at the maximum rate allowed by law . . . ." MDJ, Ex. 1 at 2. California Civil Code § 3287(a) provides that "[a] person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day . . . ." Pursuant to California Civil Code § 3289(b) "[i]f a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach." Cal. Civ. Code § 3289(b). Here, the damages from cross-defendants' breach are capable of being made certain, and the record reflects that the Agreement did not provide a specific rate of interest. Accordingly, ACIC is entitled to recover interest from the date it settled the claims. The record reflects that the eight payments made under the bonds were issued as follows: (1) $183,960.58 on December 20, 2017; (2) $75,264.00 on August 17, 2016; (3) $93,943.51 on May 31, 2016; (4) $59,290.00 on April 11, 2016; (5) $2,725.00 on August 10, 2016; (6) $24,580.00 on November 22, 2016; (7) $27,320.50 on March 16, 2017; and (8) $61,490.85 on November 14, 2016. MDJ, Exs. 4, 8, 11, 14, 17, 21. ACIC is entitled to prejudgment interest at a rate of 10% per annum commencing at the date each payment was issued.

Lastly, ACIC also requests $14,462.11 for the attorneys' fees it incurred in resolving the claims made against the bonds. ECF No. 24 at 11-12. The record reflects, however, that the fees requested are based primarily on the work ACIC's counsel performed in litigating this action. *See* MDJ, Exs. 5, 22, 18. Local Rule 293 provides that a motion for an award of attorney's fees shall be filed not later than 28 days after the entry of final judgment. *See* E.D. Cal. L.R. 293.

/////

/////

Rule 293 further requires a party seeking an award of attorney's fees to submit an affidavit addressing certain criteria that the court will consider in determining whether an award of attorney's fees is appropriate. *See* E.D. Cal. L.R. 293(b) and (c).

ACIC has not submitted an affidavit addressing the criteria listed in Local Rule 293. Accordingly, its requests for attorney's fees shall be addressed in an appropriate motion filed in conformance with Local Rule 293.

IV. Conclusion

For the reasons state above, it is hereby RECOMMENDED that:

1. ACIC's application for default judgment on its breach of contract claim (ECF No. 24) be granted;

2. ACIC be awarded damages in the amount of $528,574.44, plus prejudgment interest at the rate of 10% per annum commencing:

    a. April 11, 2016 for $59,290.00;

    b. May 31, 2016, for $93,943.51;

    c. August 10, 2016, for $2,725.00;

    d. August 17, 2016, for $75,264.00;

    e. November 14, 2016, for $61,490.85;

    f. November 22, 2016, for $24,580.00;

    g. March 16, 2017, for $27,320.50; and

    h. December 20, 2017, for $183,960.58.

3. ACIC's request for attorney's fees be denied without prejudice to a motion brought under Local Rule 293; and

4. Upon resolution of all remaining claims in this action, judgment be entered in ACIC's favor and against Hubzone, Charmiane Burnett, and Larry Lofton on ACIC's breach of contract claim.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  March 13, 2019.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE